**TUPUA, FAUTANU and SIPAI, Plaintiffs**

**v.**

**AUMAVAE, Defendant**

No. 10-1910

High Court of American Samoa

Civil Jurisdiction, Trial Division

["Matai" name: "Faiivae"]

October 10, 1910

H. M. T. PEARCE, Chaplain, U.S.N., *Senior Member;* J. L. DWYER, *Member;* and TUIASOSOPO, *Member*

DECISION

The name FAIIVAE is a name of high rank in the Western District, and particularly in the village of Leone. The

last holder of the name, FAIIVAE Pauna, died during the month of June of this year, and after his death a number of meetings were held by members of his family in the attempt to decide upon the succession to this honorable title.

At one of the meetings of the family, according to the allegations of plaintiffs, the name FAIIVAE was divided, and four persons were elected or agreed upon to hold the name—that is, the name which had been previously held by one person, FAIIVAE Pauna, should be held by four individuals, making a total of four FAIIVAES in the village of Leone—FAIIVAE Tupua, FAIIVAE Fautanu, FAIIVAE Sipai and FAIIVAE Aumavae.

This allegation is controverted by the defendant Aumavae. According to defendant's evidence, no definite settlement was reached at the meeting, and the four persons mentioned were considered merely as candidates for the title.

A resolution to confer a title upon four persons is a most unusual proceeding. There are instances in the history of the Faiivae family where the name has been held for a limited period contemporaneously by two persons, but the division of a name, so as to be held at the same time by four persons, would be analogous to dividing the crown of a monarchy between four persons upon the death of a King —a condition certain to bring about anarchy and civil war.

The Court is convinced that no definite settlement was arrived at, as alleged by the plaintiffs, but that the meeting adjourned without deciding the matter.

Subsequently a meeting was held at which Satele of Vailoa and other chiefs, constituting the so-called "Seetalaluma" of the family, and some other members of the FAIIVAE family attended. At this meeting the family decided that the wishes of the late FAIIVAE Pauna should be carried out, and that his brother, Aumavae, the defendant, should succeed to the name.

The testamentary desires of the late FAIIVAE regarding the succession to the name had been formally expressed by him to His Excellency, the Governor, during his last sickness. For some unknown reason, very little consideration was given to the wishes of the deceased chief at the various preliminary meetings of the family. Plaintiffs urged that the late FAIIVAE had no power to name or to nominate a successor, but the proofs offered fail to convince the Court that the deceased chief had no voice in the naming of his successor. Leoso, the principal witness for the plaintiffs, testified that the late chief had been allowed to take the name and to retain the name upon condition that he would have no right to name a successor. This testimony has not been corroborated and lacks probability. There is no testimony to show that FAIIVAE Pauna ever accepted such a condition. On the other hand, FAIIVAE Ioane held the name during his lifetime and passed it down to his brother Pauna, the late chief.

The case at bar resembles somewhat the case of *Lata v. Taatai*, tried in the High Court in 1904, in which the Court said:—

"No less than six persons each claimed to have the absolute separate right to nominate and appoint the 'Gaoteote'. This sole control claimed by individuals is an anomaly. They cannot exercise it, nor can they enforce obedience to their will except through superior force of arms."

The law regarding succession is thus stated by the High Court in the case of *Matautia Laifa v. Matautia Tautanu*, 1 A.S.R. 226 (1910):—

"The law regarding succession to titles in Samoa as laid down by this Court in the case of *Lata v. Taatai* regarding the name 'Gaoteote' (1904) recognizes the right of the holder of that title to nominate, and the right of the family to confirm the title of the successor. We follow that decision in this case with the additional principle that the holder of a title on his deathbed has a presumptive right to nominate his successor, subject to his family's confirmation,

and the burden of proof is upon the party seeking to prove that his title to the name ceases wholly with his death."

In the case of *Vili v. Faiivae*, tried in 1907, the Court held:—

"The Plaintiffs have raised the question of the right of the sons of Matthew Hunkin, whose wife is alleged to have been a member of the FAIIVAE family, to the title. As to whether they have a right through their mother to the name "FAIIVAE" or not, is of little consequence. It is sufficient that both Ioane and the present FAIIVAE have held the position of head of the family, and have been recognized as the chief FAIIVAE for many years."

 In general, it may be said that a chief may express his wishes as to his successor, and that upon his death, his family will deliberate, taking into due consideration the wishes of the deceased chief. In the opinion of this Court, the written testamentary desires of the deceased chief should be given a large measure of consideration, in fact, they should form the basis of deliberation. The family meeting to decide upon the matter is a most useful and beneficial institution, as a deceased chief might express a preference for some one, who, through lack of citizenship, or by reason of a prison record, or of mental deficiency, would be unworthy of the name. The deliberations of the family meeting tend towards the ultimate naming of a person who would not disgrace the family name and serves to maintain a high standard of chieftainship.

 It must be understood, therefore, that in the eyes of the law, a chief holding a high name is presumed to possess all the usual and incident rights in connection with the name, until the contrary is shown by positive evidence. The attempt of Leoso to show that the late FAIIVAE did not possess these usual and incident rights was signally unsuccessful. The evidence consisted of his own statement, which was flatly denied by the defendant's evidence. To secure an even administration of justice it is essential that

234.

the truth shall be ascertained as nearly as may be, and to this end the burden of proof must be placed in this case upon those who claim that things were not what they seemed. In many cases, possession has been held to be presumptive proof of ownership until positively rebutted.

The Court is satisfied that the witnesses on both sides testified in reckless disregard of the truth, and such uncertain testimony may always be expected when a people depend upon their version of verbal statements to carry weight in a court of law twenty or more years after their utterance. In the year 1676, the people of England realized that there could be no truth and consequently little justice if such conditions were allowed to prevail, and a law was enacted entitled: "An Act for the Prevention of Frauds and Perjuries." (St. 29, Car. II, c. 3.) The chief object of this law was to prevent the facility to frauds and the temptation to perjury offered by the enforcement of obligations depending for their evidence upon the unassisted memory of witnesses. One of the clauses of this statute renders void agreements not to be performed within one year. One eminent Chief Justice said "The design of this statute was not to trust the memory of witnesses beyond one year."

While the provisions of this statute are not applicable to the case at bar, this Court must consider the vast amount of fraud and perjury which would be fostered and encouraged by a divergence from these principles. In this case, we have one writing which is reliable and authentic—the expression of the desires of FAIIVAE Pauna in his last illness. We have the fact of his control and possession of the name for a long period of years, and the additional fact that prior to Pauna's succession, his older brother Ioane (also the brother of defendant) held the name. Upon the retirement of FAIIVAE Sipai all parties finally acquiesced in the possession of the name by the Vaiapuaa branch of

the family, and the Court has no warrant for disturbing this possession upon the evidence produced by plaintiffs.

█ There would be no certainty to the succession of any of the high ranking titles, were claimants allowed to come in from all parts of the island, state a genealogical story of descent from one of the heads of the family in olden days, and claim a right to hold the name even though it might be necessary to divide it into four parts, or between six persons, as claimed in the case of *Lata v. Taatai*, mentioned above. In the course of the next generation, we might find the four or six multiplied to sixteen or twenty-four, or perhaps thirty-six.

The defendant, Aumavae, was undoubtedly nominated by the late FAIIVAE Pauna. A number of meetings were held, but the wishes of the late chief seem to have been disregarded until the meeting at which defendant was named FAIIVAE. In the opinion of the Court, this was a representative gathering. All of the relatives of the family were, of course, not present. It is apparent that it would be quite impossible to assemble all of the relatives, gathering them from all of the ramifications that have spread probably throughout the entire Samoan group since the time of the original FAIIVAE. The Court is satisfied that the Samoan naming ceremony was properly carried out at the meeting where Aumavae, the defendant, was named, and that the wishes of the deceased chief were given the consideration at this meeting that they deserved; and further that the action of this meeting at which but one candidate was decided upon is the only action which can be recognized by the Court.

The Court therefore holds that Aumavae was duly chosen as the FAIIVAE to succeed his brother, FAIIVAE Pauna, pursuant to the wishes of the deceased chief. Let a certificate of title issue accordingly.

In view of the great mass of irrelevant and uncertain testimony presented by plaintiffs as well as defendants, the costs,—assessed at $125.00—will be divided equally between plaintiffs and defendant—$62.50 to be paid by each side.